DECISION
This action for declaratory judgment comes before the Court on the petitions of the Mayor of the City of Pawtucket (Mayor), who petitions on behalf of the Purchasing Board of the City of Pawtucket (Purchasing Board), and the City Council of the City of Pawtucket (City Council). The issue for which the parties seek a judicial determination is which party — the Purchasing Board or the City Council — has the authority to select a contractor for the design, construction, and operation of a new water treatment plant for the City of Pawtucket (City). After reviewing the Pawtucket Charter (Charter) and the memorandum submitted by the parties, the Court concludes that the Purchasing Board properly possesses the authority to select a vender for the construction of a water treatment plant.
 Facts and Travel
The City is responsible for the operation and maintenance of drinking water facilities that are in accord with the regulations of the United States Environmental Protection Agency and Rhode Island Department of Health. The current state of water quality finds the City at risk of not complying with Drinking Water Standards that must be met by 2004 and 2010. In April 1999, the Pawtucket Water Supply Board (PWSB) took action designed to prevent noncompliance with the Drinking Water Standards by deciding to build a new water treatment plant.
The PWSB worked with both the City Council and Purchasing Board to create and issue a Request for Proposals (RFP) to design, build, and operate the new water treatment plant. In February 2001, after approval by the City Council and Purchasing Board, the PWSB advertised the RFP. In August 2001, the PWSB began evaluating the proposals of several firms. In January 2002, the PWSB met and voted to recommend Earth Tech to the City Council as the most suitable vendor for the project. The PWSB informed the Purchasing Board of their selection and the Purchasing Board voted unanimously to accept PWSB's recommendation.
On January 22, 2002, the City Council met to consider PWSB's recommendation. The Mayor, Earth Tech, and U.S. Filter made presentations to the City Council. On January 30, 2002, the City Council passed a resolution approving U.S. Filter as the vendor for the project. The Mayor and City Council now seek a judicial determination regarding who possesses the authority to select the vendor for the project.
 The Parties' Arguments
The Mayor argues that the Charter clearly assigns the authority to select vendors for municipal contracts to the Purchasing Board. The Mayor asserts that the Charter is the organic law of the City and, as such, is superior to any ordinance or policy. Section 4-1000 of the Charter vests the Purchasing Board with the overall responsibility for city purchasing. Section 4-1000(2) charges the Purchasing Board with the duty of approving the award for all contracts for purchases over five thousand dollars. Section 4-1006 states that in all bids for construction of public works or improvements the Purchasing Board "shall have the authority to accept the lowest bids." The Mayor goes on to make further references to instances in the Charter that bestow the power to award contracts to the Purchasing Board.
The approval of the Purchasing Board and the Purchasing Director is the only way to change the "total cost to the city of any contract totaling over five thousand dollars." Pawtucket Charter § 4-1003(A)(2). The Purchasing Board and Purchasing Director must approve in writing "any contract for goods or services required by the city on a continuing basis shall be entered into for a period of more than three years." Id. Once a request for bids is opened, only the Purchasing Board has the authority to cancel solicitation or reject all of the bids. Id. § 4-1004(D). The Mayor argues that the combination of these provisions highlighting the Purchasing Board's power to award municipal contracts and the complete lack of any provisions bestowing similar power upon the City Council makes it clear that the Purchasing Board has the power to select a vendor for the water treatment project.
The City Council argues that the Charter is silent on the matter of who has the authority to select a vendor for the water treatment project. Thus, the City Council asserts that its implied powers allow it to select the vendor. The City Council states that they have "broad authority over decisions having long term ramifications for the City." Memorandum ofLaw at 4.
The City Council points to powers that the Charter bestows upon it to make the argument that the current decision is one properly within its domain. Only the City Council can approve the sale or lease of real property owned by the City. Pawtucket Code of Ordinances § 76-1. The City Council exercises sole control over authorizing the issuance of bonds. Pawtucket Charter § 5-101. The City Council also exercises sole control over approving collective bargaining agreements "which the city has negotiated with labor organizations representing city employees, other than the employees of the school committee. . . ." Id.
§ 2-310.
The City Council argues further that the current contract proposal will eliminate the Supply Division of the PWSB and transfer the existing employees and duties to a private vendor. The City Council states that they must approve such a change to the PWSB. The argument is also made that "Logic and practicality dictate that the City Council has the right to select the operator of the water plant." Memorandum of Law at 20. The City Council bases this argument on the fact that since they have the power to refuse the issuance of bonds, the amending of the collective bargaining agreement, and the approval of the Purchasing Board's selection, they should have the power to select the vendor themselves.
 Who May Select the Vendor
The parties have agreed to the statement of facts and come to this Court seeking a judicial determination of the question of who has the power to select a vendor for this water treatment project. The Mayor argues that the Charter vests the Purchasing Board with the authority to make the selection. The City Council states that the Charter is silent on the specific issue at hand, but that a reading of the Charter as a whole supports their argument that they possess the power to select the vendor.
The Charter provides the organic law of the City with respect to municipal affairs. See Borromeo v. Personnel Board of the Town ofBristol, 367 A.2d 711, 713 (R.I. 1977); Macera v. Cerra, 1999 WL 615731 (R.I. Super. filed July 30, 1999). The Charter assigns legislative functions to the City Council. Pawtucket Charter § 1-101. Executive and administrative powers that are authorized by the Charter are vested in the Mayor and other agencies, respectively. Id. § 1-102. It is clear to this Court that the power to select a vendor for this municipal contract resides in the Executive branch.
The City Council's argument that the Charter is silent on the issue of who has the authority to select a vendor misses the mark. Although the Charter does not expressly state that the Purchasing Board shall have the authority to select a vendor for a water treatment facility construction project, it does grant sole authority for city purchases, contracts for goods and services, and construction projects to the Purchasing Board.See id. § 4-1000 through § 4-1006. Where the Charter's language truly falls silent, however, is in regard to any reference of a grant of any such similar authority to the City Council.
Section 4-1000(2) charges the Purchasing Board with the duty to "approve the award of all contracts" that are over five thousand dollars. Section 4-1003 and 4-1004 set out the procedures for soliciting bids and awarding contracts. The only power of approval that the City Council is granted in these sections is to approve the regulations that the Purchasing Board prepares for such bidding. Thus, the Charter vests in the Purchasing Board the authority to approve the award of contracts.
The City Council remarks that § 4-1000 through § 4-1006 demonstrate that the Purchasing Board is merely a ministerial office whose job is to approve contracts that were awarded by others. In fact, that is exactly what happened in the present case. The PWSB selected the vendor then sought the approval of their selection by the Purchasing Board. The Purchasing Board approved and then sought final ratification from the City Council. This is the course of action that is mandated by both the Charter and the RFP.
Turning to the RFP, the Court notes that its plain language clearly grants the power to select the vendor to the PWSB. Section 3.1 states that "The Selected Proposer with whom the PWSB awards and enters into anAgreement will be referred to as the Company." (Emphasis added.) The section goes on to state that "Upon evaluation of the Proposals submitted in response to this RFP, the PWSB intends to enter into an Agreement with the Proposer whose Proposal is responsive to this RFP. . . ." (Emphasis added.) Id. Section 3.2(7) lays out the rights and options of the PWSB:
 "To select, negotiate with and enter into an Agreement with the Proposer whose Proposal is responsive to this RFP, contains the lowest evaluated bid price based on the objective measurable criteria detailed in this RFP, and is deemed most favorable to the PWSB by the PWSB as ratified by the Pawtucket City Council. . . ."
The section further states that the PWSB has the right to invalidate the RFP at any time and issue another one. § 3.2(10).
The only conclusion permitted from a review of these sections of the RFP is that the PWSB has the authority to select and contract with their agreed upon vendor. The only power given to the City Council is that of ratification of PWSB's selection. Ratification is "the confirmation of a previous act" and the "affirmance of a prior act which did not bind him."Black's Law Dictionary 1261 (6th ed. 1990). Here, the previous act that the City Council has the power to ratify is PWSB's selection of a vendor. Neither the Charter nor the RFP grants the City Council any more than a power to approve a selection that has already been made by another. The definition of "approval" is "the act of confirming, ratifying, assenting, sanctioning, or consenting to some act or thing done by another." Id. at 102. The Charter grants the City Council the power of approval in many instances; that same Charter, however, does not bestow upon the City Council the power of selection. The City Council has no power to select a vendor sua sponte.
Next, the City Council argues that they possess broad powers to act in the best interests of the City for projects that have long term ramifications. The Charter and the RFP, however, grant broad contracting authority to the Purchasing Board and the PWSB, respectively. These vague powers that the City Council refers to cannot supersede powers specifically granted by the Charter to other agencies or departments.
The City Council's argument that the transfer of some PWSB employees to the new vendor somehow triggers in the Charter a clause that requires City Council approval of collective bargaining agreements is also beside the point. The City Council fails to elucidate how the power of approval over collective bargaining agreements relates to the authority to select a vendor for a construction project.
According to the RFP, the process of vendor selection was a "competitive, sealed proposal," which subjects it to R.I.G.L. § 45-55-5Competitive Sealed Bidding. The City Council argues that the section does not contradict their authority to select a vendor. Here, however, the City Council assumes too much, for it has not proven that it does in fact have the authority to select a vendor.
Finally, the City Council's assertion that common sense dictates that they who control the veto power and purse strings should select the vendor is without merit. Both the Charter and RFP were structured so that one branch of municipal government could wield only so much power. One branch of government selects the vendor and another branch secures the financing. The wisdom and success of this system are well-noted.
 Conclusion
The selection of a vendor for the design, construction, and operation of a water treatment facility is properly vested in the executive branch of the City government. The Court concludes that the Charter and RFP place the authority to select the vendor in the Purchasing Board. Thus, the Court grants the declaratory judgment in favor of the Mayor.
Counsel are directed to confer and submit to this Court an order in conformity with this decision.